## Caruthers, Appellant, *v.* Peoples Natural Gas Company et al.

Argued April 19, 1944.   Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

334

*Carroll Caruthers,* in propria persona, with him *Thomas G. Taylor,* for appellant.

*G. Kirby Herrington,* with him *James Gregg,* of *Portser, Gregg & McConnell,* for appellees.

OPINION BY KENWORTHEY, J., July 15, 1944:

The appeal is from a decree dismissing a bill in equity. Appellant sought a mandatory injunction to compel appellee to remove a ten-inch pipe line laid through and across his property, to fill up the ditch, repair the property, replace the trees destroyed and put the property in its original condition. In dismissing the bill, the court certified the case to the law side and directed him to proceed against appellee in an action of trespass.

Appellant acquired the property subject to an agreement of record dated July 11, 1906, between his predecessors in title and appellee in which the latter was granted a right of way to lay an eight-inch pipe line for the transportation of gas. Appellee was further granted the right to lay, at any time, an additional line alongside of the first. The agreement provided: "It is further agreed that an additional sum equal to three dollars ($3) per rod for each rod of pipe, in each line, to be laid shall be paid to grantors before entry on premises is made to lay the first or additional line." [1]

---

[1] The applicable provisions are: "...... do hereby grant to The Peoples Natural Gas Co., its successors or assigns, the right of way, to lay, maintain, operate and remove an eight inch pipe line for the transportation of gas on, over and through our lands ...... with ingress and egress to and from the same, subject to the dictation of the grantor as far as practical. ...... The Peoples Natural Gas Company ...... agrees to pay, any damages which may arise to crops and fences from the laying, maintaining

The eight-inch line was laid in 1906 and has been maintained since as a transmission line. Because of increased consumer demand it became inadequate. On May 14, 1940, appellee's construction contractor,[2] without appellant's knowledge, entered the land and graded a twenty-two to thirty-five feet strip parallel to the original line in preparation for the construction of a trench in which the additional ten-inch line was to be laid. The grading caused considerable damage. Not only was appellant not informed that the entry on and damage to his land had been made, but before entering appellee failed to pay or to tender payment of the three dollars per rod provided for in the agreement. Tender of the proper sum ($201 representing sixty-seven rods of pipe) was made on May 29th but refused.

Appellant contends the agreement of 1906 did not grant appellee a vested easement but merely an option to purchase one at an indefinite future time and that, being indefinite, it violated the rule against perpetuities; that appellee was a trespasser on his land ab initio; and that he is without an adequate remedy at law.

---

and operating and removing said pipe line; said damage if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by said grantor, heirs or assigns, one by The Peoples Natural Gas Company, its successors or assigns, and the third by the two so appointed as aforesaid, and the award of such three persons shall be final and conclusive. And it is hereby further agreed that the said The Peoples Natural Gas Company, its successors or assigns, may at any time lay an additional line of pipe alongside of the first line as herein provided, upon the payment of a like consideration, and subject to the same conditions for the same size line; also to have the right to change the size of its pipes, the damage if any, to crops and surface in making such change, to be paid by the said The Peoples Natural Gas Company. It is further agreed that an additional sum equal to three dollars ($3) per rod for each rod of pipe, in each line, to be laid shall be paid the grantors before entry on premises is made to lay the first or additional line."

[2] Also named as a defendant.

(1) Leading text writers agree that the rule against perpetuities is applicable to easements: Gray, Rule against Perpetuities, (4th ed.) §§314-316; Lewis on Perpetuities, pp. 619, 620; Foulke, Perpetuities in Pennsylvania, §366. But a presently vested expansible easement must be distinguished from an option to acquire future additional servitudes. The present grant of a right to cut timber or mine coal or make use of a right of way, with a provision for payment if and when the easement is expanded, does not run counter to the rule. On the other hand, a grant subject to a condition precedent which may or may not occur within the maximum period of the rule is void. See Restatement, Property, sections 393, 399. "Nor does the circumstance that a payment is to be made when the easement or profit is used, prevent it from being a present right, not contingent upon payment." Gray, Rule against Perpetuities, §279, citing *Post v. Bailey*, 110 W. Va. 504, 159 S. E. 524.

The question is whether the provision in the agreement of 1906 that $3 per rod "shall be paid the grantors before entry on premises is made to lay the first or additional line" is a condition precedent to the grant or whether it merely stipulates the time, viz., in advance, when payment is to be made. We think it is the latter.

If it had been the intent of the parties that advance payment be a condition precedent to the grant of the right it would have been a simple matter to have made this clear by tying it in with the words of the grant. If the agreement had provided: "The Peoples Natural Gas Company is hereby granted, conditional upon the payment in advance of three dollars ($3.00) per rod of pipe line to be laid, the right of way to lay, maintain, operate, etc." there would be presented a case which clearly violated the rule against perpetuities. See *Barton v. Thaw*, 246 Pa. 348, 92 A. 312. But the grant of the right of way, both as to the original and the addi-

tional line, is absolute. And in holding that the subsequent provision (see *Calder's Est.*, 343 Pa. 30, 33, 21 A. (2d) 907) for payment in advance of entry upon the premises is not a condition precedent to the right granted (*Threlkeld v. Inglett*, 289 Ill. 90, 96, 124 N. E. 368, 370; *Beloit Bldg. Co. v. Quinn*, 145 Kan. 507, 66 P. (2d) 549), we are helped by the well-settled rule of construction that vested interests are favored as against contingent: *Riverside Tr. Co. v. Twitchell*, 342 Pa. 558, 564, 565, 20 A. (2d) 768.

(2) Even if the agreement of 1906 were void, it would not necessarily follow that appellant would be entitled to the extraordinary relief he seeks. Without any agreement appellee might have taken the land in the exercise of its power of eminent domain: Act of May 29, 1885, P. L. 29 §10 as amended, 15 PS 2031; *Fayette County Gas Co. v. Pa. P. U. C.*, 153 Pa. Superior Ct. 271, 33 A. (2d) 761. Where a public utility proceeds to take land without striking a satisfactory bargain with the owner and without resorting to the proper eminent domain proceedings it is liable for damages in an action of trespass (*Oliver v. Railway Co.*, 131 Pa. 408, 19 A. 47), or ejectment (*Dexter v. Penna. Power Co.*, 127 Pa. Superior Ct. 419, 193 A. 94), and it has been held that in an appropriate case the owner is entitled to a mandatory injunction: *Davis v. Southwest Penna. Pipe Lines*, 34 Pa. Superior Ct. 438, affirmed 223 Pa. 56, 72 A. 281. But an injunction is a matter of grace not of right (*Becker v. Lebanon etc. Street Railway*, 188 Pa. 484, 41 A. 612), and the owner may be relegated to relief in an action of trespass: *Becker v. Lebanon etc. Street Railway*, 195 Pa. 502, 46 A. 1096; *Hankey v. Phila. Co.*, 5 Pa. Superior Ct. 148. And since the utility has the power of eminent domain the verdict in an ejectment action may be conditioned upon the failure of the utility to establish, within a reasonable time, its rights in an eminent domain proceeding (*Phila. etc. R. R. Co. v.*

*Cooper,* 105 Pa. 239), and a mandatory injunction has been stayed pending such proceeding: *Davis v. Southwest Penna. Pipe Lines,* supra.

In the present case the court's refusal to grant a mandatory injunction compelling appellee to restore the land to its original condition was equitable and just in view of the preservation of plaintiff's right to recover full damages in an action of trespass. The evidence indicates that a large—perhaps unnecessarily large—number of full-grown trees were uprooted and cut down and the expense of restoring them would be tremendous if their complete restoration is not impossible. The burden on appellee, particularly in view of its quasi sovereign power to take the land by eminent domain proceedings, would be disproportionate to the ultimate benefit to appellant. Although, following the authorities we have cited, the lower court might have merely stayed the injunction proceedings pending the outcome of eminent domain proceedings, there are circumstances here, particularly the claim by appellant which has some support in the evidence that the damage exceeded that necessary to meet appellee's requirements, which lead us to the conclusion there was no abuse of discretion in the decree it entered.

(3) What we have already said should dispose without further discussion of appellant's contention that he is without an adequate remedy at law. He is unable to prevent appellee from taking whatever of his land is reasonably necessary for the public purpose. He is not entitled to keep his land intact and untouched against the paramount requirements of this public utility. The principle of law which imposes such hardships on owners of private property has been with us as long as this commonwealth has been a sovereign entity. He has none but the right to adequate and full compensation for the property taken. Although we have no sympathy for what was either high-handed or ill-

considered conduct on the part of appellee's representatives in entering upon appellant's land without notice to appellant and a proper tender of the sums stipulated in the agreement and in perhaps destroying considerably more land than was required, these are matters relevant to and which may be taken care of in a claim for punitive damages in the trespass action. See *Studebaker v. New Castle Gas Co.,* 7 Pa. Superior Ct. 641; *Denniston v. Phila. Co.,* 161 Pa. 41, 28 A. 1007; *Marshall v. American Telegraph & Telephone Co.,* 16 Pa. Superior Ct. 615.

The arbitration provision in the agreement will not bar appellant's right to have the measure of his damages assessed by a jury. The parties did not agree to submit their dispute with regard to the amount of damages to any particular person or tribunal named, but to three persons, one of whom to be chosen by each party and the third by the first two. As the arbitration statute (Act of April 25, 1927, P. L. 381, 5 PS 161 et seq.) by its terms does not apply to an agreement made prior to its enactment, the agreement is revocable by either party: *Commercial Union Assurance Co. v. Hocking,* 115 Pa. 407, 8 A. 589; compare *Britex Waste Co. v. Schwab & Sons,* 139 Pa. Superior Ct. 474, 482, 12 A. (2d) 473.

Decree is affirmed, but because of the peculiar circumstances of this case costs are imposed on appellee.