WILLIAM HARRIS *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF FITHIAN *et al.*, Defendants.—(CHARLES TRIMBLE *et al.*, Defendants-Appellees.)

Fourth District   No. 13942

Opinion filed May 31, 1977.

Moore & Nelson, P. C., of Hoopeston (William E. Nelson, of counsel), for appellants.

Wendell W. Wright, H. Ivan Sadler, Harvey H. Acton, and William R. Kesler, all of Danville, for appellees.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

This appeal arises from the entry of summary judgment in favor of the defendants and raises as the sole issue on review whether there were outstanding issues of fact which would preclude the entry of summary judgment. Leave to file an immediate appeal under Supreme Court Rule 304(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 304(a)) was granted by the trial court. The original complaint was filed against various named defendants, including the Village of Fithian and homeowners within that municipality. Those defendants in turn filed third-party complaints against the appellees here. Thereafter, the plaintiffs amended their complaint to name the appellees as original defendants. Those defendants are owners of land which, until midway through this lawsuit, was owned by the estate of Leah Dalbey and was known as the Dalbey farm.

The action grows out of the failure of a farm tile drainage system of indeterminate age to adequately drain the farmlands of the plaintiff. This system follows the direction of natural surface water flow across lands comprising a part of the village and through land owned by the appellees until the collected water is discharged into Stoney Creek. Count I of the complaint charged the village with obstructing the natural flow of surface water from plaintiffs' land and did not concern the farm tile drainage system at issue here. Counts II and III charged that defendants, or a part of them, have made unauthorized hookups into the system and that the system has become mutual as to each of them. It appears that before the development of this part of the village, the Dalbey lands were already part of this mutual drainage system. Plaintiffs sought permission to enter the property of all defendants to repair the system and remove any unauthorized hookups, the cost of such repairs and removals in proportion to the benefits received by each user and a restraining order to prevent future unauthorized hookups were a part of the requested relief.

Those defendants who were the successors in interest of the Dalbey estate moved for summary judgment and filed four affidavits in support of their motion. At the same time, they filed a written consent to allow plaintiffs to enter the Dalbey lands for the purposes of inspection and repair. By this instrument they also promised to pay the costs of removing any unauthorized hookups found on their land. The affidavits, taken together, state that the tile system was operating properly throughout the

Dalbey farm, adequately drained their land and that no illegal hookups existed on that portion of the system extending through the land of the appellees.

In opposition to the motion for summary judgment, plaintiffs filed three affidavits of their own. Those statements, taken together, recite that a mutual farm tile drainage system exists, but that it has been, since 1973, ineffective in draining plaintiffs' land and that the reason the system is not performing is that there are obstructions somewhere in it. A tenant on plaintiffs' land averred that he had seen water bubbling back from the drain as water entered it at the head of that portion of the system on the Dalbey farm. Another affidavit stated that the Dalbey lands should receive the benefit of drainage from this farm tile system.

■■ Summary judgment is permitted if the pleadings, admissions and affidavits on file show no genuine material issue of fact is at issue, and if the movant is entitled to relief as a matter of law. (*Hedrick v. Goodwin Bros.* (1975), 26 Ill. App. 3d 327, 325 N.E.2d 73.) When facts are established by affidavit and are uncontradicted by opposing affidavit, those facts are taken as true and are admitted for the purpose of summary judgment. *Rymal v. Ulbeco, Inc.* (1975), 33 Ill. App. 3d 799, 338 N.E.2d 209.

■■ Defendants' affidavits admit that their lands are served by a mutual farm tile drainage system which is connected to the lands of the plaintiffs. This existence of a mutual drainage system created by written or parol agreement under the Illinois Drainage Code (Ill. Rev. Stat. 1975, ch. 42, par. 2—8) is not an issue in contention. Section 2—11 of the same chapter provides that the owner of the land benefited by the mutual drain may enter any lands upon which the drain runs for the purposes of repair. By consenting in writing to plaintiffs' entry onto their land, defendants have removed this as a disputed issue. While the owners of a mutual drainage system may compel disconnection of any illegal hookups (*King v. Manning* (1922), 305 Ill. 31, 136 N.E. 730), the affidavits submitted by defendants in this regard state that no such illegal hookup exists on their property. Those affidavits are uncontroverted and are taken as true. Even if such a hookup was discovered during plaintiffs' inspection, the defendants have agreed to pay for its removal so that this contention, too, is removed from dispute.

The only issue remaining for consideration is whether these defendants may be forced to pay a proportionate share of the cost of repair to the drainage system throughout its course, and, if so, to what extent. A question of fact remains in dispute only if, as a matter of law, defendants here owe such a duty.

■■ As a general rule, the distribution of costs of repair of a mutual farm tile drainage system is made according to the benefit each owner

receives, which in turn must be determined from the facts of each case. (*Cox v. Deverick* (1916), 272 Ill. 46, 111 N.E. 560; *Fobar v. Higginson* (1955), 6 Ill. App. 2d 29, 126 N.E.2d 521; *Illinois Central R.R. Co. v. Commissioners of East Lake Fork Special Drainage District* (1889), 129 Ill. 417, 21 N.E. 925.) The question is whether all owners or only those owners receiving an actual benefit must support an improvement to a drainage system. By analogy to cases concerning statutory drainage districts, we hold that the defendants here cannot be liable under the facts alleged.

■■ In *People ex rel. Mann v. Allen* (1928), 330 Ill. 433, 161 N.E. 867, the supreme court held that just because one owned land within a drainage district did not mean that he would be forced to pay for all improvements to that system. No owner may be forced to pay for repairs or improvements which do not actually benefit his property. It is not enough that the owner possesses land within the same watershed. "In order to be assessed for a drainage project, lands must be rendered more productive, more accessible, or the market value substantially increased and their actual or intrinsic value enhanced." (*Union Drainage District v. Special Drainage District* (1973), 10 Ill. App. 3d 829, 835, 295 N.E.2d 91, 95.) The mere fact that a proposed improvement would cause the water running through another's ditches to accelerate does not constitute a benefit to that other party. *Union.*

In *Union*, a jury finding, that there was no benefit to defendant districts by a proposed improvement, was appealed as being against the manifest weight of the evidence. There, the Malta and Shabonna drainage districts maintained separate drainage systems which emptied into the Union Drainage District. Union proposed a general cleaning of their district's ditches and sought to assess the Malta and Shabonna districts on the theory that an improvement to its ditches would result in a benefit to the whole system. The evidence showed that the Malta and Shabonna districts were cleaned in 1965 and 1969, respectively, and that drainage in the land area served by those districts was effective and capable of handling even unusual rainfall. The evidence further showed that the grade in the defendant districts was much deeper than in the plaintiff district so that the water flowed through the ditches of defendant districts in an adequate manner, irrespective of the quality of plaintiff district's ditches. Therefore, the improvement to plaintiff's part of the system could not be taxed against the defendants' portion pro rata.

■■ Here the affidavits attached to the motion for summary judgment stated that an examination of that portion of the system located on the former Dalbey farm was made and that the water was freely flowing through the drains. Further, those affidavits stated that the drains, as presently functioning, adequately drained the Dalbey lands. It is

permissible for nonexpert witnesses to testify to the benefit or lack of benefit to land of drainage. (*Spear v. Drainage Commissioners* (1885), 113 Ill. 632.) Therefore, it can be said that the trial court could reasonably take as true the statements in the affidavits.

■■ Thus there remains no material issue of fact to be decided and summary judgment was proper. Because the land of the defendants will not be benefited by any repairs made to the system by the plaintiffs at other points, they will not in any event be liable for the costs of those repairs. The summary judgment entered by the trial court is accordingly affirmed.

Affirmed.

REARDON and HUNT, JJ., concur.